RECONSTRUCTION FINANCE CORPORATION, PLAINTIFF, v. ALFRED F. GOHL, FLORENCE JAMES, DEFENDANTS.

Decided September 8, 1941.

For the plaintiff, *Thomas H. Munyan* (*Daniel Bell, Jr.*)

For the defendant Gohl, *Edward I. Feinberg*.

JAYNE, C. C. J.    The trial of this action resulted in the direction of a verdict in favor of the plaintiff against the defendant Alfred F. Gohl. An exception to the ruling was allowed but the attorney of the defendant has desired a rule to show cause pursuant to which he assigns the substance of the exception as a reason for the allowance of a new trial.

A rapid summary of the significant facts will exhibit the subject debated. Antecedently, a promissory note made by Florence James and her father Albert Gohl and payable to Pauline Y. Gohl, the mother of Florence, had been discounted for value by the Chelsea-Second National Bank and Trust Company of Atlantic City. The bank pledged this note among others with the Reconstruction Finance Corporation as collateral security for a loan made by the corporation to the bank. Before the maturity of the note, the co-maker Albert Gohl died. The note was returned to the bank at maturity

for presentation, collection or renewal and was protested for non-payment. Thereafter, on January 16th, 1933, a promissory note of like amount was made by Florence James and her brother Albert F. Gohl, the defendant, and delivered to and accepted by the bank. This is the note in suit. On January 27th, 1933, the bank was declared insolvent and a receiver was appointed to assume charge of its assets. The note became due on February 16th, 1933. Incidentally, it may be explanatory to disclose that this action to recover the principal and interest due on the note was instituted by Charles A. Faircloth, the receiver of the bank. The cause of action was thereafter assigned to the present plaintiff and an appropriate rule substituting the assignee as the party plaintiff was entered.

At the trial the essential proof of the execution, delivery and non-payment of the note was introduced by the plaintiff.

The defendant ventured to prove that he received no consideration for his execution of the note and signed the instrument solely to accommodate the bank. The testimony, however, presented by the defendant tended only to reveal that after the maturity of the former note, Mrs. James sought to effectuate some arrangement with the bank to continue the obligation. Ultimately she was informed that the bank would accept a new note if her brother, the present defendant, would sign the note as co-maker with her. The defendant visited the bank at the request of his sister, Mrs. James, and it is said that he was there informed by the note teller and subsequently by the cashier that his signature was desired merely as a matter of form and that he would never be held responsible for the payment of the note. He subscribed to the instrument, he says, with that understanding. It must, of course, be acknowledged that as between the immediate parties and a party other than a holder in due course, the delivery of the note may be shown to have been conditional or for a special purpose only and not for the purpose of transferring the property in the instrument. *N. J. S. A.* 7:2-16. Here, however, there was actual and intentional delivery of the note but allegedly no obligation, conditional or otherwise, to pay it. The agreement attempted to be shown

here is not a condition attached to the delivery of the note. The statute is therefore inapplicable. In consideration of the execution and delivery of the note by the defendant, the bank refrained from demanding and enforcing the payment of the former note. The sister and mother of the defendant were thereby accommodated. The accommodated party in a legal sense is the party to whom the credit of the accommodating party is loaned not a third person who may receive an advantage by the loan of the credit. The oral agreement, if made, was rather an engagement in which the defendant knowingly embarked upon an excursion of deception. He inserted among the ostensible assets of the bank an obligation in writing which, by reason of a contemporaneous oral agreement, he never expected to fulfill.

In *Mount Vernon Trust Co.* v. *Bergoff*, 5 *N. E. Rep.* (*2d*) 196, Judge Lehman, speaking for the Court of Appeals of New York, characterized such an engagement in this language: "A fictitious note delivered to a bank, intended to become part of its apparent assets, though not intended to be enforceable, is in itself a continuing falsehood calculated to deceive the public, and any person delivering such a note becomes a party to the falsehood."

"In such case it is immaterial whether the note was based on good consideration or not. The stability of banks is a matter of such public concern that the state or federal government regulates the affairs of each bank and periodically examines its apparent condition. The state cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank. The defendant may not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced. *Cf. Iglehart* v. *Todd*, 203 *Ind.* 427; 178 *N. E. Rep.* 685;

*Denny* v. *Fishter,* 238 *Ky.* 127; 36 *S. W. Rep.* (2d) 864; *Bangor Trust Co.* v. *Christine,* 297 *Pa.* 64; 146 *Atl. Rep.* 545; *Cedar State Bank* v. *Olson,* 116 *Kan.* 320; 226 *Pac. Rep.* 995; *Mars National Bank* v. *Hughes,* 256 *Pa.* 75; 100 *Atl. Rep.* 542."

Moreover, the note teller and cashier in attempting to make such an agreement for the bank would be trespassing beyond the scope of their ordinary authority. It did not appear that the board of directors authorized or ratified or indeed had any knowledge of any such extraordinary bargain. *First National Bank of Greencastle* v. *Baer,* 277 *Pa.* 184; 120 *Atl. Rep.* 815. The borrowing or loaning of mere naked and ineffectual signatures on negotiable instruments would be a traffic inimical to sound public policy. The insolvency of the bank intervened.

The legal issues at the close of the trial were (1) whether parol evidence was admissible to prove such an oral contemporaneous agreement and (2) whether the defendant, assuming the circumstances to have existed as he related them, could interpose such a defense in an action prosecuted by a receiver for the benefit of the creditors of the insolvent bank.

One ground for the direction of the verdict was that the oral agreement, if made, was in the circumstances an illegal engagement and to permit it to be utilized by the defendant in the present action would be contrary to sound public policy. If it was an illegal compact, how, then, does the bank or its assignee, escape the principle—*ex dolo malo non oritur actio.* The answer is that the cause of action of the plaintiff does not arise *ex turpi causa.* The bank does not require the aid of the deceptive transaction to prove its alleged cause of action and the integrity of the established written contract (the note) could not be affected by what, if true, was an unauthorized collateral undertaking to practice deception. The defendant was the party who sought the benefit of the oral understanding. In view of all of the circumstances to which reference has been made he was estopped from invoking a failure of consideration as a defense.

A survey of the pertinent authorities sustains the propriety of the directed verdict. The doctrine applied was recognized

by our Supreme Court in *Beers* v. *Broad, &c., National Bank of Newark,* 102 *N. J. L.* 5; 122 *Atl. Rep.* 105, and approved, on appeal, by the Court of Errors and Appeals, 107 *N. J. L.* 372; 151 *Atl. Rep.* 905. In *Schmid* v. *Haines,* 115 *N. J. L.* (at *p.* 274); 179 *All. Rep.* 801, the doctrine is discussed with a citation of authorities. Other cases illustrative of this principle of estoppel may be found cited in 64 *A. L. R.* 595; 95 *Id.* 543.

True, the testimony concerning the making of the oral agreement was in a contradictory state but the application of the principle of estoppel left no essential and indispensable factual question to be submitted to the jury.

The American editors in Notes to Duchess of Kingston's Case, 3 *Smith's Lead. Cas.* 729, stated: "A person who is so ill-advised as to execute a written contract in reliance upon an assurance that it shall not be literally enforced, must submit to the loss if he is deceived, and cannot ask that a principle of great moment to the community shall be made to yield for the sake of relieving him from the consequences of his indiscretion." The so-called parol evidence rule applies within its qualified sphere with like rigor to negotiable instruments. *Chaddock* v. *Vanness,* 35 *N. J. L.* 517. It is, of course, a well settled rule that as between parties to a note the true consideration, the absence thereof or the accommodation character of the paper may be shown. To admit parol proof of a contemporaneous oral agreement that so contradicts a lawful, valid written contract as to render the latter absolutely impotent, would amount to a circumvention of the beneficial object of the parole evidence rule. To hold that parties made two contracts at the same time, one of which is in positive contradiction of the other is somewhat fantastic. In *Wright* v. *Remington,* 41 *Id.* 48, the third ground of defense was, that at the time of the execution of the notes, it was represented to Mrs. Remington that the signing was a mere matter of form, and that she would not be held liable. It was held that evidence of such contemporaneous parol declarations was inadmissible. Reviewing the judgment in the Court of Errors and Appeals, 43 *Id.* (at *p.* 452), the Chancellor stated: "As to the other defense, it is enough to

say, that to admit proof of a parol contemporaneous promise, on the part of the payees, that the wife should not be called upon to pay the notes, would be in violation of the familiar rule of evidence which excludes parol evidence to contradict the terms of written instruments."

In the case of *Gerli* v. *National Mill Supply Co.*, 78 *N. J. L.* 1; 73 *Atl. Rep.* 252; *affirmed*, 80 *N. J. L.* 464; 78 *Atl. Rep.* 1134, the question projected was whether the contract embodied in a promissory note, by which an accommodation maker obligates himself to pay a fixed amount ·of money to the holder at a specified date, can be controlled by oral evidence that at the time of the delivery of the note by the maker to the holder it was understood between them that the note was to be paid by a third person for whose accommodation it was drawn and not by the maker. Such a defense was held to be inadmissible. In *Middleton* v. *Griffith*, 57 *N. J. L.* 442; 31 *Atl. Rep.* 405, it was declared in 57 *N. J. L.* (at *p.* 448): "Evidence of a parol contemporaneous agreement that the note should not be paid, in whole or in. part, is not admissible."

The incompetency of proof to establish an oral contemporaneous agreement of similar import was discussed by Chief Justice Gummere in the Beers case previously cited. (Supreme Court opinion) and Mr. Justice Heher alludes to the subject in *Schmid* v. *Haines, supra*. In *Giberson* v. *First National Bank*, 100 *N. J. Eq.* 502; 136 *Atl. Rep.* 323, relief · was sought in equity upon the assumption that an oral agreement of such import could not be proved in a court of law and it was held by the learned Vice-Chancellor that such a defense would not be available to the complainants at law.

Numerous cases, apparently the weight of authority, holding that such testimony is inadmissible are cited in 20 *A. L. R.* 490; 54 *Id.* 717; 75 *Id.* 1519.

· A reconsideration of the grounds upon which the ruling was based leads to the conclusion that the direction of the verdict was proper.

Rule discharged.